UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 OCT -6 PM 3: 30

CLERK

BY_____

DEPUTY CLERK

UNITED STATES OF AMERICA )
)
v. )
) Case No. 2:16-cr-46
JOSEPH A. WRIGHT, )
)
Defendant. )

**OPINION AND ORDER DENYING DEFENDANT'S
MOTIONS TO DISMISS THE INDICTMENT AND SUPPRESS EVIDENCE**
(Doc. 21)

This matter came before the court on September 1, 2016 for an evidentiary hearing and oral argument with regard to Defendant Joseph A. Wright's motions to dismiss the Indictment and suppress evidence (Doc. 21). At the hearing, United States Marshal Senior Inspector Joseph Gaines testified on behalf of the government.

Defendant's arguments in support of his motion to dismiss the Indictment are three-fold: (1) the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a), is unconstitutional on its face and is unconstitutional as applied to him; (2) the Indictment fails to state an offense; and (3) venue is improper in Vermont. With respect to his motion to suppress, Defendant contends that he was subjected to custodial interrogation without *Miranda* warnings. The government opposes the motions.

The government is represented by Assistant United States Attorney William B. Darrow. Defendant is represented by Assistant Federal Public Defender Steven L. Barth.

**I.    Findings of Fact.**

On January 29, 2016, Senior Inspector Gaines traveled to Defendant's single family residence in Woodsville, New Hampshire in order to interview him regarding a potential SORNA violation. Senior Inspector Gaines arrived during the mid-morning and was met by a local New Hampshire police officer and an inspector from the New

Hampshire office of the U.S. Marshals Service. Both Senior Inspector Gaines and the New Hampshire federal inspector were in civilian clothes; the New Hampshire police officer was in uniform. Although the New Hampshire police officer may have had a holstered gun, he did not display it at any time. The federal inspectors were not visibly armed. None of the law enforcement officers drew their weapons.

The New Hampshire police officer approached Defendant's front door first because he knew Defendant's family. Senior Inspector Gaines was aware that there were several adults and children in the home. An adult female opened the door, and Senior Inspector Gaines asked whether Defendant was present. She responded affirmatively. When Defendant came to the front door, Senior Inspector Gaines asked: "Do you mind coming outside to talk to me about where you are living?" or words to that effect. Defendant agreed and left his residence.

As Defendant walked down his front steps, Senior Inspector Gaines suggested they speak inside his vehicle, which was parked in Defendant's driveway. Defendant sat in the front passenger seat, and Senior Inspector Gaines sat in the driver's seat. The vehicle's doors were unlocked, and the vehicle was running with the heat on because the outdoor temperature was seasonably cold.

Senior Inspector Gaines showed Defendant his credentials and informed Defendant that he was not under arrest. He interviewed Defendant for approximately ten minutes in a "cordial and pleasant" manner. He did not raise his voice or physically or verbally threaten Defendant. During the interview, the two other law enforcement officers remained outside approximately twenty-five yards from Senior Inspector Gaines's vehicle.

At the end of the interview, Senior Inspector Gaines thanked Defendant for his time, and they shook hands. Defendant returned to his residence and was not arrested until approximately two months later. At no other time did Senior Inspector Gaines or the other law enforcement officers physically touch Defendant. He was also never handcuffed or otherwise physically restrained.

On April 7, 2016, Defendant was charged in a one-count Indictment as follows:

In or about February 2015, in the District of Vermont and elsewhere, the defendant, JOSEPH A. WRIGHT, a person required to register under the Sex Offender Registration and Notification Act, traveled in interstate commerce, and knowingly failed to register and update a registration.

(18 U.S.C. § 2250)

(Doc. 18.)

## II. Conclusions of Law and Analysis.

### A. Whether the Court should Dismiss the Indictment based on Improper Venue.

As a threshold matter, Defendant argues that the court should grant his motion to dismiss the Indictment because venue in Vermont is improper. He cites the Supreme Court's recent decision in *Nichols v. United States*, 136 S. Ct. 1113 (2016), wherein the Court observed that the "plain text" of SORNA, "in particular, § 16913(a)'s consistent use of the present tense[,]" does not require a defendant to update his or her registration in the jurisdiction of departure once he or she moves to a foreign country. *Nichols v. United States*, 136 S. Ct. 1113, 1118 (2016). The government responds that *Nichols* is silent on the issue of venue, the holding does not apply to this case, and Vermont is a permissible venue based on 18 U.S.C. § 3237(a) and Second Circuit precedent.

Because "[p]roper venue in criminal proceedings was a matter of concern to the Nation's founders[,]" the United States Constitution "twice safeguards the defendant's venue right[.]" *United States v. Cabrales*, 524 U.S. 1, 6 (1998). Article III provides that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment guarantees a defendant the right to trial by "an impartial jury of the state and district wherein the crime shall have been committed." U.S. Const. amend. VI; *see also* Fed. R. Crim. P. 18 ("Unless a statute or [the Federal Rules of Criminal Procedure] permit otherwise, the government must prosecute an offense in a district where the offense was committed.").

3

"The determination of criminal venue is informed by where physical *conduct* occurred, and not where criminal intent was formed." *United States v. Miller*, 808 F.3d 607, 615 (2d Cir. 2015) (internal quotation marks omitted); *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) ("the *locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it.") (internal quotation marks omitted). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id.* (footnote omitted).

"Except as otherwise expressly provided by enactment of Congress," 18 U.S.C. § 3237 provides that "any offense . . . begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). It further provides that:

> [a]ny offense involving the use of the mails, [or] transportation in interstate or foreign commerce, . . . except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

*Id.* An offense is considered to be "continuing" when "the explicit language of the substantive criminal statute" so provides or designates it as continuing or when "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States*, 397 U.S. 112, 115 (1970). Where:

> the acts constituting the crime and the nature of the crime charged implicate more than one location, the [C]onstitution does not command a single exclusive venue. The [C]onstitution requires only that the venue chosen be determined from the nature of the crime charged as well as from the location of the act or acts constituting it, and that it not be contrary to an explicit policy underlying venue law.

*United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985) (footnote omitted).

SORNA mandates that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an

employee, and where the offender is a student." 42 U.S.C. § 16913(a).  To keep his or
her registration current, a defendant must:

> not later than 3 business days after each change of name, residence,
> employment, or student status, appear in person in at least 1 jurisdiction
> involved pursuant to subsection (a) of this section and inform that
> jurisdiction of all changes in the information required for that offender in
> the sex offender registry.

*Id.* at § 16913(c).

Section 2250(a) of SORNA identifies three essential elements: (1) the defendant is
required to register under SORNA; (2) the defendant engaged in interstate travel; and (3)
the defendant knowingly failed to register or update his registration.  Thus, "travel in
interstate commerce is an element of the offense[.]"  *United States v. Kopp*, 778 F.3d 986,
988 (11th Cir. 2015), *cert. denied*, 135 S. Ct. 2876 (2015).

In *Nichols*, the Supreme Court considered "whether the State a sex offender
leaves—that is, the State where he formerly resided—qualifies as an 'involved'
jurisdiction under § 16913."  *Nichols*, 136 S. Ct. at 1116.  The Court, resolving a circuit
split regarding whether a defendant who moves from the United States to a foreign
country must register in the jurisdiction of departure, concluded that the jurisdiction of
departure was "no longer a 'jurisdiction involved'" and therefore "SORNA's plain text—
in particular, § 16913(a)'s consistent use of the present tense—[] did not require
[defendant] to update his registration in Kansas once he no longer resided there."  *Id.* at
1117-18.  The *Nichols* Court observed that Congress recently criminalized the failure to
register "relating to intended travel in foreign commerce" which, in turn, supported a
conclusion that, prior to this legislative enactment, a sex offender had no obligation to
register in the jurisdiction of departure when moving to a foreign country.  *Id.* at 1119
(internal quotation marks omitted); *see also* 42 U.S.C. § 16913(c) (excluding foreign
countries from the definition of jurisdiction).  The *Nichols* Court did not address the
issues of interstate travel under SORNA, whether a SORNA violation is a continuing
offense, or venue.

Pre-*Nichols*, the Second Circuit held that a defendant engaged in interstate travel must update his or her registration in the jurisdiction of departure:

> Between SORNA's language and legislative history, it is clear that a registrant must update his registration information if he alters his residence such that it no longer conforms to the information that he earlier provided to the registry. . . . [W]e conclude that SORNA requires a convicted sex offender to update his registration information in person upon terminating his current residence with no intention of returning, even if the sex offender has not yet established a new residence.

*United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010) (concluding district court did not err in instructing the jury about the scope of the defendant's duties under SORNA). Post-*Nichols*, the issue is whether the departure jurisdiction remains a proper venue.

Defendant cites two recent opinions from the Eastern District of Wisconsin wherein the district court held that, under *Nichols*, there was no duty to register under SORNA in the jurisdiction of departure and therefore venue did not lie there. *See United States v. Toney*, 2016 WL 3945358, at *1 (E.D. Wis. July 19, 2016); *United States v. Haslage*, 2016 WL 3661362, at *1 (E.D. Wis. July 5, 2016). The Wisconsin court noted that "prior to *Nichols*, courts, including the Seventh Circuit, recognized that proper venue for a SORNA violation could be had in the district from which a sex offender flees." *Toney*, 2016 WL 3945358, at *2. The court further acknowledged that "*Nichols* does not directly address the issue of proper venue for SORNA violations; notably, the term 'venue' appears nowhere in the decision." *Id.* at 3. The court nevertheless concluded that the Court's statutory interpretation compelled the conclusion that:

> The moment [defendant] left Wisconsin, she was not in violation of SORNA because the law provides a 3-day window to inform the jurisdiction of her change of residence. Once the 3-day window ended, [defendant] resided in Minnesota and was no longer a resident, employee, or student in Wisconsin. Thus, the only "jurisdiction involved" where she was required to register, was Minnesota, where the crime began, continued, and ended. As such, the Court finds that venue is improper in Wisconsin.

*Id.* at 4.

6

The problem with the Wisconsin court's approach is two-fold. First, it ignores the factual and legal reality that a defendant's SORNA violation cannot "beg[i]n, continue[], and end[]" in the arrival jurisdiction because no crime occurs in that instance as the essential element of interstate travel is lacking.[1]

Second, whether a SORNA violation is completed *upon departure* is a different question from whether there is venue in the departure jurisdiction because the crime allegedly began there. The majority approach is to treat a SORNA violation as an offense involving more than one jurisdiction under § 3237(a).[2] Where an offense involves more than one jurisdiction, venue is permissible in any state where the offense "beg[a]n, continued, or [was] completed." 18 U.S.C. § 3237(a). In the context of a SORNA violation, venue is thus proper in both the jurisdiction of departure, where the offense

---

[1] The Wisconsin court's interpretation of *Nichols* would render it permissible for a sex offender to leave a jurisdiction and travel interstate continuously without violating SORNA provided he or she did not remain in an arrival jurisdiction beyond the three-day safe harbor for sex offender registration. This would produce an anomalous result that would strike at the heart of SORNA's legislative purpose. *See United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009) (stating SORNA was created to "track the interstate movement of sex offenders").

[2] *See United States v. Kopp*, 778 F.3d 986, 989 (11th Cir. 2015), *cert. denied*, 135 S. Ct. 2876 (2015) (applying § 3237 and determining venue for § 2250(a) is proper in the jurisdiction of departure "[b]ecause the crime consists of both traveling and failing to register, [where defendant] began his crime in Georgia and consummated it in Florida"); *United States v. Lewis*, 768 F.3d 1086, 1093, 1095 (10th Cir. 2014) ("The plain language of § 3237's invitation to prosecute [a SORNA violation] in 'any district' where the offense was 'begun, continued, or completed' can only be read to create more than one option for the government to lay venue" and thus "venue for a § 2250 violation can lie in the departure district"); *United States v. Snyder*, 611 F. App'x 770, 771-72 (4th Cir. 2015) (observing § 2250(a) "does not contain an express venue provision" and concluding that venue is proper in either the jurisdiction of departure or arrival because defendant's "offense necessarily involved more than one district because it required interstate travel, beginning when he moved from West Virginia to North Carolina, which gave rise to his obligation to register in either state, and ending when he failed to register in either state"); *United States v. Burns*, 418 F. App'x 209, 213 (4th Cir. 2011) (concluding § 3237(a) applies to SORNA offenses because § 2250(a) "necessarily involve[s] more than one district because [defendant] traveled interstate" such that the jurisdiction of departure was a proper venue); *Howell*, 552 F.3d at 718 (holding defendant may be prosecuted for SORNA violation in either departing or arrival state because a "sex offender violates SORNA only when he or she moves between states.").

began (albeit inchoate and incomplete under *Nichols*),[3] as well as the jurisdiction of arrival, where the offense is complete. *See Kopp*, 778 F.3d at 988-89. Because the Constitution does not "command a single exclusive venue" and requires only that "the venue chosen be determined by the nature of the crime charged as well as from the location of the act or acts constituting it[,]" *Reed*, 773 F.2d at 480, and because a SORNA violation always involves multiple jurisdictions, post-*Nichols* venue in the departure jurisdiction remains proper and "is not contrary to an explicit policy underlying venue law." *Id.* Defendant's motion to dismiss the Indictment based on improper venue is therefore DENIED.

## B.   Whether the Court Should Grant the Motion to Dismiss the Indictment because SORNA is Unconstitutional.

Defendant challenges the constitutionality of the Indictment, arguing: (1) Congress lacked authority under the Commerce Clause to criminalize failure to register based on purely local offenses; (2) SORNA violates the *Ex Post Facto* Clause because Vermont has not implemented SORNA; (3) SORNA impermissibly encroaches upon state power in violation of the Tenth Amendment; and (4) SORNA violates the non-delegation doctrine because of the authority it delegates to the Attorney General. Defendant concedes that each of these arguments has been addressed in controlling Second Circuit precedent. *See United States v. Lott*, 750 F.3d 214, 220 (2d Cir. 2014) ("Turning briefly to [defendant's] broader arguments regarding SORNA's constitutionality, we have considered them and found them to be without merit").

SORNA, which was enacted on July 27, 2006, seeks to "protect the public from sex offenders and offenders against children . . . [by] establish[ing] a comprehensive national system for the registration of those offenders[.]" 42 U.S.C. § 16901. It requires sex offenders to provide notice to state governments of their current name and location for inclusion in sex offender registries and renders it a criminal offense to fail to register in the following circumstance:

---

[3] The departure jurisdiction may or may not be where the defendant's criminal intent is formed, but it is undoubtedly a location where an act essential to the crime occurs because it is from the departure jurisdiction that the defendant crosses state lines.

Whoever--

**(1)** is required to register under the Sex Offender Registration and Notification Act; . . .

**(B)** travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

**(3)** knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

Individuals who have initially registered or who are otherwise required to register under SORNA must keep their registration current by notifying their reporting jurisdictions of any changes in name, address, employment, or student status within three business days. 42 U.S.C. § 16913(c). SORNA contains a provision for individuals convicted of offenses occurring before its implementation:

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

*Id.* at § 16913(d). SORNA directs the states to "provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter." *Id.* at § 16913(e).

On February 28, 2007, the Attorney General published the Interim Rule which purported to make SORNA requirements "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to enactment of that Act." 28 C.F.R. § 72.3. The Attorney General relied on the "good cause" exception in the Administrative Procedure Act, 5 U.S.C. § 553(b)(B), (d)(3), to make the Interim Rule effective immediately and to render inapplicable the requirements for advanced publication, public comment, and agency response. The Attorney General further stated that the Interim Rule makes it "indisputably clear that SORNA applies to all sex

9

offenders (as the Act defines that term) regardless of when they were convicted[.]" 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. pt. 72).

On May 30, 2007, the Attorney General issued proposed SMART Guidelines which were designed to assist jurisdictions in implementing SORNA's regulations. 72 Fed. Reg. 30210. The SMART Guidelines, which purport to apply SORNA's requirements retroactively, provide that a jurisdiction will not be deemed to have implemented SORNA until it "carries out the requirements of SORNA as interpreted and explained in these Guidelines." 72 Fed. Reg. 30213. On July 2, 2008, the Attorney General issued the finalized SMART Guidelines, and on May 26, 2009, issued a one-year extension for jurisdictions to implement SORNA. Vermont has not fully implemented SORNA's regulations.

The court addresses Defendant's challenges to the constitutionality of SORNA by adopting and supplementing its rulings in an analogous case. *See United States v. Mee*, 2012 WL 1638436, at *7 (D. Vt. May 9, 2012) (denying defendant's motion to dismiss the indictment on the grounds that SORNA violates the Constitution).

### 1.    Whether SORNA Violates the Commerce Clause.

Arguing that SORNA impermissibly regulates the acts of individuals convicted of purely local sex offenses, Defendant contends that SORNA violates the Commerce Clause by failing to satisfy any standard by which Congress may permissibly regulate commerce. The Second Circuit has rejected this constitutional challenge, holding "§ 2250(a) is a proper congressional exercise of the commerce power[.]" *United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010).[4]

---

[4] The federal government's enumerated powers under the United States Constitution include the power to "regulate Commerce . . . among the several States," and to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Power[.]" U.S. Const. art. I, § 8, cl. 3, 18. Although the power to regulate commerce "may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution," *Gibbons v. Ogden*, 22 U.S. 1, 75 (1824), commerce that does not extend to or affect other states is outside the Commerce Clause's reach. *Id.* at 74; *United States v. Lopez*, 514 U.S. 549, 553 (1995). In *Lopez*, the Supreme Court identified three broad categories of activity that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even

Defendant further argues that the Supreme Court's decision in *National Federal of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012) ("*NFIB*") "compels the conclusion that Congress lacks authority to force individuals to register under SORNA." (Doc. 21 at 9.)  However, the Second Circuit has rejected similar arguments that *NFIB* "undermine[s] the holding of *Guzman*[.]"  *United States v. Robbins*, 729 F.3d 131, 135-36 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 968 (2014) (concluding "[a]t least insofar as SORNA applies to an interstate traveler such as [defendant], we remain bound by *Guzman*'s conclusion that SORNA 'is a legitimate exercise of congressional Commerce Clause authority.'").  Under binding Second Circuit authority, Defendant therefore cannot prevail on his arguments that SORNA violates Congress's authority under the Commerce Clause.  *See Lott*, 750 F.3d at 220 (2d Cir. 2014) ("SORNA does not violate the Commerce Clause").

### 2.    Whether SORNA Violates the *Ex Post Facto* Clause.

Defendant next argues that applying SORNA to him violates the *Ex Post Facto* Clause because SORNA was enacted after his November 2001 New Hampshire convictions.  Application of a statute violates the *Ex Post Facto* Clause where it "punishes as a crime an act previously committed, which was innocent when done," or "makes more burdensome the punishment for a crime, after its commission," or "deprives one charged with crime of any defense available according to law at the time when the act was committed."  *Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir. 1997) (internal quotation marks omitted) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)); *see also* U.S. Const. art. I, § 9, cl. 3 ("No . . . ex post facto Law shall be passed").

When an individual travels in interstate commerce and fails to register or update his or her sex offender registry after the effective date of the regulations, that individual violates SORNA.  *See Guzman*, 591 F.3d at 94.  Where the individual also had notice of

---

though the threat may come only from intrastate activities;" and (3) "activities having a substantial relation to interstate commerce."  *Id.* at 558-59.  Congress limited the criminal enforcement of § 2250(a) to those individuals who knowingly fail to register or to update a registration only when they have traveled in interstate commerce.  *See* 18 U.S.C. § 2250(a).  It thus confined its exercise of the commerce power to activities recognized by *Lopez*.

11

his or her registration requirements, he or she could have complied with both state and federal law by registering. *Id.* Thus, "[t]here is . . . no *ex post facto* problem with [such an individual's] convictions." *Id.*

As in *Guzman*, Defendant allegedly traveled across state lines and subsequently failed to register or update his registry after SORNA was enacted and after it became effective as to individuals with pre-Act convictions. Defendant's alleged interstate travel and failure to register also allegedly occurred after he had notice of his registration requirements. Defendant is not being prosecuted for an offense that he committed before SORNA criminalized his conduct, nor is he being exposed to a more burdensome punishment or being deprived of a defense that existed at the time the charged crime was allegedly committed. Accordingly, the Indictment does not violate the *Ex Post Facto* Clause.

### 3.      Whether SORNA Violates the Tenth Amendment.

Citing the Tenth Amendment's prohibition of federal use of state officials for enforcement of federal laws, Defendant contends that SORNA unlawfully compels state and local law enforcement, particularly those who operate state sex offender registries and aid in the federal registration of sex offenders, to enforce a federal statute.

The Tenth Amendment states "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Pursuant to this constitutional grant of reserved power to the states, the federal government may not "command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program" because "such commands are fundamentally incompatible with our constitutional system of dual sovereignty." *Printz v. United States*, 521 U.S. 898, 935 (1997).

Contrary to his assertion, Defendant has not shown that the federal government has violated the Tenth Amendment by commandeering any Vermont or any other state's law enforcement officers. He has not established that state officials were compelled to do anything under SORNA which their sex offender registry laws did not already require.

As there was no compelled state enforcement of SORNA, Defendant's Tenth Amendment challenge fails. *See Guzman*, 591 F.3d at 94 (rejecting claim that SORNA violates the Tenth Amendment).[5]

### 4. Whether SORNA Violates the Non-Delegation Doctrine.

Defendant challenges the Attorney General's implementation of SORNA under § 16913 as a violation of the non-delegation doctrine, asserting it impermissibly allowed the Attorney General to legislate the scope of SORNA's retrospective reach.

The Constitution declares that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States[.]" U.S. Const. art. I, § 1. The non-delegation doctrine, however, "does not keep Congress from obtaining the assistance of its coordinate branches; it merely requires Congress to provide clear guidance and delineate the boundaries of delegated authority." *United States v. Van Buren, Jr.*, 2008 WL 3414012, at *15 (N.D.N.Y. Aug. 8, 2008) (internal quotation marks omitted).

Section 16913 authorizes the Attorney General "to specify the applicability of the requirements of this subchapter to sex offenders convicted before [SORNA's enactment.]" 42 U.S.C. § 16913(d). In seeking to create a "comprehensive national system for the registration of [sex offenders and offenders against children,]" 42 U.S.C. § 16901, Congress appears to have recognized that "combining the registry systems of 50 states presented 'precisely the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate.'" *United States v. Sudbury*, 2012 WL 925960, at *3 (W.D. Wash. Mar. 19, 2012) (quoting *Mistretta v. United States*, 488 U.S. 361, 379 (1989)). The goal of creating a comprehensive system "is sufficiently intelligible to limit the Attorney General's discretion." *Id.*

---

[5] *See also Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010) (finding no Tenth Amendment violation where defendant had "not demonstrated that the order requiring him to register as a condition of parole undertakes to obligate the State of Maryland or the Sheriff of Wicomico County" to enforce a federal regulatory program); *United States v. Herbert*, 2009 WL 4110472, at *7 (N.D.N.Y. Nov. 20, 2009) ("[B]ecause Defendant has not demonstrated that SORNA compelled New York or New Jersey to make changes to their sexual offender registries, [defendant's] Tenth Amendment challenge must be rejected[.]").

The Second Circuit has broadly interpreted § 16913(d) and has concluded the Attorney General's authority under SORNA to either implement SORNA as to all sex offenders or to determine the extent of its retroactivity is adequately circumscribed by the regulations. *See Guzman*, 591 F.3d at 93 (stating "[t]he Attorney General's authority under SORNA is highly circumscribed. SORNA includes specific provisions delineating what crimes require registration; where, when, and how an offender must register; what information is required of registrants; and the elements and penalties for the federal crime of failure to register") (internal citations omitted). For this reason, § 16913(d) does not offend the non-delegation doctrine. *See Guzman*, 591 F.3d at 93 (recognizing "[t]he Supreme Court has upheld much broader delegations than" those found in SORNA and concluding defendants' delegation arguments fail); *see also United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012) ("Congress's delegations under SORNA possess a suitable 'intelligible principle' and are 'well within the outer limits of [the Supreme Court's] nondelegation precedents.'") (alterations in original) (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457 (2001)).

### 5. Whether SORNA's Retroactive Application to Defendant is Unconstitutional because Vermont has not Implemented SORNA.

Because Vermont has not fully implemented SORNA, Defendant argues that his compliance with SORNA is impossible. Vermont, however, has had a sex offender registration program in place at all relevant times to this case, and the Second Circuit has opined that "compliance with SORNA is not 'impossible' in light of the fact that the states at issue had a registration program." *United States v. Hester*, 589 F.3d 86, 93 (2d Cir. 2009); *see also Guzman*, 591 F.3d at 93 ("SORNA creates a federal duty to register with the relevant existing state registries regardless of state implementation of the specific additional requirements of SORNA."). Where a defendant "could have updated his registration information" in a state that has a state registration program but has not fully implemented SORNA, the failure of that state to implement SORNA "does not excuse [the defendant's] failure to meet the registration requirements that SORNA

14

imposes on individual sex offenders and to register with the programs that [do] exist."
*Hester*, 589 F.3d at 93.

Relying on the Due Process Clause, Defendant also contends that application of
SORNA to him is unconstitutional based on Vermont's incomplete implementation of its
terms. However, because Vermont had a registry in effect prior to Defendant's alleged
travel and failure to register, Defendant had notice of his registration requirement and
could have complied with Vermont law and SORNA by registering. Accordingly,
SORNA's application to Defendant does not violate the Due Process Clause.

Having determined that binding Second Circuit authority precludes Defendant's
constitutional arguments, Defendant's motion to dismiss the Indictment on those grounds
is DENIED.

      **C.**     **Whether the Indictment Fails to State a Claim.**

Defendant urges the court to dismiss the Indictment for failure to state a claim
because the Indictment does not state that he had a duty to register in Georgia, the
jurisdiction of arrival. The government responds that dismissal is unwarranted because
the Indictment closely tracks the language of § 2250(a).

Rule 7 of the Federal Rules of Criminal Procedure requires an indictment to "be a
plain, concise, and definite written statement of the essential facts constituting the offense
charged[.]" Fed. R. Crim. P. 7(c)(1). To satisfy the requirements of Rule 7, "an
indictment need do little more than to track the language of the statute charged and state
the time and place (in approximate terms) of the alleged crime[.]" *United States v.
Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975). The Second Circuit has held that an
indictment is sufficient if it: "[F]irst, contains elements of the offense charged and fairly
informs a defendant of the charge against which he must defend, and, second, enables
him to plead an acquittal or conviction in bar of future prosecutions for the same
offense." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (internal quotation
marks omitted) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

The statute at issue in this case provides:

Whoever--

(1) is required to register under the Sex Offender Registration and
Notification Act; . . .

(B) travels in interstate or foreign commerce, or enters or leaves, or resides
in, Indian country; and

(3) knowingly fails to register or update a registration as required by the
Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

The Indictment tracks the language of § 2250(a) and alleges that in or about
February of 2015, in Vermont and elsewhere, Defendant, a person required to register
under SORNA, traveled in interstate commerce and knowingly failed to register and
update a registration. Contrary to Defendant's assertion, the statutory language does not
additionally require that the Indictment specify the arrival jurisdiction. *See United States
v. Roy*, 2012 WL 47768, at *2 (D. Vt. Jan. 9, 2012) (denying motion to dismiss
indictment for failure to state an offense where the indictment tracked statutory language
by alleging "that on the dates identified, in Vermont and elsewhere, Defendant, a person
required to register under SORNA, knowingly failed to register after traveling in
interstate commerce").[6]

Defendant also contends that the Indictment should be dismissed because it fails to
"descend to [the] particulars." *Russell v. United States*, 369 U.S. 749, 765 (1962)
(internal quotation marks omitted). As the government points out, Defendant cites no

---

[6] *See also United States v. Leader*, 2011 WL 1584367, at *5 (E.D. Wash. Apr. 27, 2011)
(concluding indictment sufficiently stated the three elements of § 2250(a) where it alleged that
"on or about and between April 21, 2010, and December 23, 2010, in the Eastern District of
Washington, [defendant], a person required to register under the Sex Offender Registration and
Notification Act, traveled in interstate commerce and did knowingly fail to register and update a
registration, in violation of 18 U.S.C. § 2250(a)."); *United States v. Dean*, 606 F. Supp. 2d 1335,
1338 (M.D. Ala. 2009) (determining an indictment that alleged defendant failed to register as
required under SORNA was not deficient because "it was unnecessary for the United States to
allege the alternative means for conviction-being a sex offender for purposes of SORNA by
reason of a conviction under the set of laws described in § 2250(a)(2)(A) . . . the allegation that
the defendant was required to register under SORNA necessarily implies that he was a sex
offender under SORNA").

authority requiring the Indictment to specify the state or states in which he failed to register, and the language of § 2250(a) does not identify this as an element of the offense.

In any event, Defendant makes no cognizable claim of lack of notice or prejudice. *See United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (refusing to dismiss indictment, although it was "not a model of clarity," where there was an "absence of any showing of prejudice") (internal quotation marks omitted); *see also Roy*, 2012 WL 47768, at *3 (opining that "it is not enough to merely identify an alleged deficiency in an indictment; a criminal defendant must go further and demonstrate that the alleged deficiency caused him or her prejudice").

Because the Indictment tracks the language of § 2250(a) and states the approximate time and place of the alleged SORNA violation, it does not fail to state a claim, and Defendant's motion to dismiss the Indictment on this basis is DENIED.

### D.     Whether the Court Should Grant Defendant's Motion to Suppress.

Defendant seeks suppression of his statements to Senior Inspector Gaines, arguing that he was subjected to custodial interrogation without the benefit of *Miranda* warnings.[7] Although the Second Circuit has not decided who bears the burden of establishing custody for *Miranda* purposes, other circuits have held that a defendant must establish that he or she was in custody. *See United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989) (affirming district court's dismissal of defendant's *Miranda* claim because defendant "failed to demonstrate that he was subjected to custodial interrogation"); *United States v. Davis*, 792 F.2d 1299, 1309 (5th Cir. 1986) ("[Defendant] had the burden of proving that he was under arrest or in custody"); *see also United States v. Ramos*, 2012

---

[7] A police officer may not question a suspect who has been taken "into custody" without first warning the suspect that he or she:

> has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda v. Arizona*, 384 U.S. 436, 479 (1966). If no warning is given to a suspect who is in custody, the prosecution may not use statements obtained during the interrogation in its case-in-chief. *United States v. Newton*, 369 F.3d 659, 668 (2d Cir. 2004).

WL 1854747, at *11 (D. Vt. May 21, 2012) ("A criminal defendant bears the burden of establishing that he or she was subjected to custodial interrogation."). Regardless of which party bears the burden of proof, Defendant was not subjected to custodial interrogation.

The question of "whether a suspect is 'in custody' is an objective inquiry." *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011). The analysis begins "by asking whether a reasonable person would have thought he was free to leave the police encounter at issue. If the answer is yes, the *Miranda* inquiry is at an end; the challenged interrogation did not require advice of rights." *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004). If, however, "a reasonable person would not have thought himself free to leave," the court must determine whether "a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* An individual is in custody for purposes of *Miranda* "[o]nly if the answer to this second question is yes[.]" *Id.* In conducting this inquiry, the court must consider "all of the circumstances surrounding the interrogation[.]" *J.D.B.*, 564 U.S. at 270-71 (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam)) (internal quotation marks omitted). Those circumstances include:

> the interrogation's duration; its location (e.g., at the suspect's home, in public, in a police station, or at the border); whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; [and] whether officers told the suspect he was free to leave or under suspicion[.]

*United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011).

In the instant case, the facts overwhelmingly support the conclusion that Senior Inspector Gaines's interview of Defendant was noncustodial. After Defendant came to front door of his residence, Senior Inspector Gaines requested that he speak with him outside. Defendant agreed and did not hesitate to leave his residence. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (considering fact that defendant "came voluntarily to the police station" in determining he was not in custody); *Davis v. Allsbrooks*, 778 F.2d 168, 171 (4th Cir. 1985) (holding defendant not in custody where his "initial contact

18

with police was the result of his voluntary response to their request to speak with him");
*United States v. Waltzer*, 528 F. Supp. 646, 651 (E.D.N.Y. 1981) (noting "the agents asked to speak with [defendant] in a polite manner, a request that he was free to refuse").

Once Defendant was outside, Senior Inspector Gaines suggested they sit in his vehicle which was parked in Defendant's driveway and in relatively close proximity to a residence where Defendant's family members were present. Defendant again agreed to do so. *See United States v. Norrie*, 2013 WL 1285864, at *15 (D. Vt. Mar. 26, 2013) (determining "the interview had none of the hallmarks of custodial interrogation" in part because defendant "voluntarily agreed to get into [the officer's] truck at [another officer's] request."); *United States v. Poland*, 2006 WL 163409, at *5 (D. Me. Jan. 19, 2006) (determining defendant was not in custody where officers interviewed him inside an unmarked police vehicle that was parked in his driveway and was in view of his residence); *United States v. Rainbow*, 380 F. Supp. 2d 1071, 1079 (D.N.D. 2005) (recounting that defendant "walked without restraint to [the] FBI [a]gent['s] . . . unmarked vehicle which was parked in [defendant's] driveway").

Defendant was not handcuffed or otherwise restrained at any point during the interview. *See Newton*, 369 F.3d at 676 ("Handcuffs are generally recognized as a hallmark of a formal arrest"); *see also United States v. Smith*, 2012 WL 5187922, at *5 (D. Vt. Oct. 18, 2012) ("Defendant thus faces a considerable challenge in establishing that he was in custody while seated without handcuffs or other physical restraints on his living room couch"). The officers neither brandished a firearm nor made any other show of force. *See United States v. Faux*, 828 F.3d 130, 138 (2d Cir. 2016) (rejecting claim of custodial interrogation where "agents did not display their weapons or otherwise threaten or use any physical force"); *United States v. Quilter*, 2012 WL 1410322, at *3 (D. Vt. Apr. 23, 2012) ("Hallmarks of seizure include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'") (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). The doors of the vehicle where the interview took place remained

unlocked. *See Norrie*, 2013 WL 1285864, at *17 (noting the "doors to the truck were not locked" while defendant sat inside trooper's vehicle for questioning).

At the conclusion of the interview, Defendant was free to return to his residence and was not placed under arrest. *See United States v. Lowen*, 647 F.3d 863, 868 (8th Cir. 2011) (noting that officers "did not arrest [defendant] upon completion of the questioning" and finding defendant was not in custody for *Miranda* purposes); *United States v. Guarno*, 819 F.2d 28, 32 (2d Cir. 1987) (holding defendant was not in custody when he was neither placed under arrest, threatened with arrest, nor arrested after interview in motel room but rather was told he was "free to leave . . . whenever he wished to do so"); *United States v. Titemore*, 335 F. Supp. 2d 502, 507 (D. Vt. 2004) (concluding defendant was not in custody when trooper "left the residence without arresting" defendant). There is thus no factual basis for concluding that Defendant was not free to leave the interview or for concluding that his freedom of movement was restricted to a degree commensurate with a formal arrest. *Newton*, 369 F.3d at 672.

The nature and duration of the interview also support the conclusion that Defendant was not in custody. At the outset, Senior Inspector Gaines informed Defendant that he was not under arrest. *See Tankleff v. Senkowski*, 135 F.3d 235, 244 (2d Cir. 1998) (noting one factor in a custody determination is "whether a suspect is or is not told that she is free to leave"); *United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992) (opining "presence or absence of affirmative indications that the defendant was not free to leave" is often a factor in custody determination and concluding defendant was not in custody in part because no one "affirmatively convey[ed] the message that the defendant [was] not free to leave"). The interview was "cordial and pleasant," and Senior Inspector Gaines did not raise his voice or otherwise threaten Defendant. *See United States v. Bassignani*, 575 F.3d 879, 884 (9th Cir. 2009) (concluding defendant was not in custody when, among other factors, the "interview was conducted in an open, friendly tone[,]" defendant "participated actively[,]" and the "conversation was plainly consensual"); *see also Norrie*, 2013 WL 1285864, at *17 ("The interview proceeded in a conversational manner"). The interview was short in duration and was concluded by a handshake

whereupon Defendant returned to his residence. *See Davis*, 778 F.2d at 171 (finding no custodial interrogation where interview lasted only forty-five minutes and was not a "marathon session designed to force a confession"); *United States v. Zygmont*, 2013 WL 3246139, at *6, *8 (D. Vt. June 26, 2013) (concluding that questioning was not custodial in part because it "lasted no longer than thirty minutes" and therefore was "relatively brief in duration").

Based on the totality of the circumstances, Defendant was not in custody during his interview with Senior Inspector Gaines. He was therefore not subjected to custodial interrogation and *Miranda* warnings were not required. *See Newton*, 369 F.3d at 669 ("*Miranda*'s warning requirements apply only to 'custodial interrogation.'"). Defendant's motion to suppress his statements during the January 29, 2016 interview on the grounds that he was subjected to custodial interrogation without *Miranda* warnings is therefore DENIED.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motions to dismiss the Indictment and suppress evidence (Doc. 21).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 6th day of October, 2016.

Christina Reiss, Chief Judge
United States District Court